Good morning. I would appreciate the Court's assistance in helping me reserve a couple of minutes for rebuttal. Certainly. May it please the Court – oh, I'm sorry, I'm A.J. Cutchins here representing the appellant, Gregory Colbert. This is not a case in which we're waiting for the Supreme Court to clarify the law. The pertinent constitutional principles are clear, and they were clearly articulated by the California Court of Appeal. The only question is whether the State court's factual determination that appellant's forerunner request was equivocal was unreasonable in light of the record. As the State court of appeal correctly observed, there is nothing equivocal about a defendant saying, I want to have a new lawyer. If I can't have that, I want to represent myself. That is precisely the form of conditional forerunner request appellant made in this case. After a lengthy colloquy, the judge, I'll call him Judge A, granted appellant's forerunner request. Judge A strongly advised the appellant to consider using his prior attorney, Mr. Berry, as advisory counsel to help him with procedural matters. Some three weeks later, another judge, Judge B, who presided over the case for a total of about 15 minutes, took it upon himself, without notice, to strip the appellant of his self-represented status and to reappoint Mr. Berry. Judge B gave as his reason for doing so that the request was equivocal because appellant would prefer to have a new, more competent lawyer appointed. As such, Judge B erroneously conflated a conditional forerunner request with an equivocal one. His ruling was directly contrary to the applicable legal principles acknowledged by both the State court of appeal and in this Court's precedent. Given that everyone agrees that the fact that a forerunner request is conditional doesn't itself prove that the request is equivocal, the question, the only question is, what evidence was there in the record to support the State court's denial of appellant's forerunner claim? The State court of appeal cited four things to support its holding. Three of them consisted of occasions on which appellant said that his first preference was to be given a new lawyer. On each occasion, he insisted that if he couldn't have a new lawyer, he preferred to represent himself rather than be represented by Mr. Berry. So the so your argument is that if he is clear that he says, I don't want this lawyer, if I'm not going to get a different lawyer, I want to represent myself, then the judge should say, all right, you are now representing yourself. That's correct, Your Honor, presuming that it was not. No matter how stupid that might be. That, you know, FREDA, FREDA is a case all about people making stupid decisions. Although, I would submit that in this case, and I don't want to go too far in the weeds here, not having him self-represented by Mr. Berry was not a stupid decision. Mr. Berry ended up doing an execrable job and has since been found to be not competent in these cases. But that's irrelevant. That's that, well, it's not strictly irrelevant. If what we're looking at is all of the circumstances to determine whether he was playing around or he was really sincere in saying, I want, if it's him, I mean, I do want a better lawyer, but if it's him, I want to represent myself, I think it is relevant that the lawyer that he had was a terrible lawyer. Do you conclude that the Supreme Court hasn't clarified the area? They sort of made a no-man's land out there, but where in the Supreme Court has the Supreme Court clarified the area? The case, the Supreme Court precedent on which we are depending is FREDA v. California. But no further. Well, no. Well, the Supreme Court has said that there's this no-man's land. They don't use those words. They use much more eloquent words. But they're playing around in this area, and they've never clarified it. But if they haven't clarified it, then this can't be contrary to the rulings of the Supreme Court. Now, what specific case do you have that I would go read and I'd say, yes, the Supreme Court's ruling was improper? And with great respect, Judge Wallace, I'm going to submit you're on the wrong track. Am I? Okay. Because what you're speaking to is 2254d-1. There's no question about contrary to or an unreasonable application of the constitutional principles. Everyone agrees what the constitutional principles are. The question is whether the factual determination was an unreasonable determination, whether the decision was based on an unreasonable determination of the facts. That is a question that arises under D-2. That does not require the Supreme Court to have decided these facts. That is a factual matter. The question of equivocality is — I'm sorry. I didn't mean to cut you off. No, well, I just — it depends on the facts in this case and what the record shows. But I just wanted to go back for a minute to the question about Mr. Berry as a — whether he's a good or bad lawyer. Wouldn't your position be the same as to the lack of equivocation in the — in your client's position? Wouldn't your position be the same even if it was not Mr. Berry and it was Clarence Darrell that was represented? It certainly would, and I don't want to go too far in that direction. I'm saying that there's some incremental support for the reasonable — you know, for his — the reasonableness of his request, his sincerity. That's — you're right. That is largely — if it's relevant, it is only marginally so. But there is something, I think, that is more relevant, and that has to do with the fact that he requests — as I understand the record in this case, Mr. Colbert clearly complained about Mr. Berry, and that we've — I think we've all read the back and forth on that. But then at some point along the way, he actually asked Mr. Berry to file some things for him, to file some sort of request for him. Can you speak — can you speak to that point? Yes. Because I know the State makes a big deal out of that. There is — first of all, there is no evidence in the record that he asked Mr. Berry to do that. Mr. Berry said in his letter, I got a call from the defendant and he wants this. So it may be that Mr. Berry took it upon himself to do that. The motion, which is at exer — of record 34, which was simply a motion to move up a hearing date by a week. And it's three sentences long. It never makes clear that it was done on — on the request of the defendant. And Mr. Berry inappropriately lists himself as counsel for the defendant, even though he acknowledges that the defendant had been granted pro per status. But there's a more important point. Yes. I don't quite get that. I just want to make sure I understand. I have taken for granted that the record — the only thing in the record shows what the lawyer says happened, and there's nothing to the contrary. Therefore, we can assume the defendant asked him to bring this motion. You say that's not so. Well, the lawyer never said that he — that the defendant asked me to bring this motion. The lawyer said, the defendant called me, this is what he wants. Isn't that — He didn't — he didn't say — he said he wants the date moved up. He never said, the defendant asked me to do this. What else would he have — the record's what it says. You can — you can draw that inference. It doesn't matter. And let me get to the more important point. The trial court in the person of Judge A had implored the appellant to consider using Mr. Berry as advisory counsel to deal with just such procedural issues. He said — he said you can look at excerpts of record 41 and 42, 45, 47. He repeatedly said, consider using Mr. Berry for these things. Appellant had no reason to think that allowing Mr. Berry to file what by any standard was an insubstantial motion was out of keeping with the advice he had received from the court. Doing so certainly was not intended, and it cannot fairly be interpreted as any sort of equivocation about whether appellant would rather represent himself than have Mr. Berry actually try the case for him. Do you want to reserve the remaining of your time? I would. Thank you. Certainly. May it please the Court. Peggy Ruffray from the Attorney General's Office for the Respondent. Your Honor, the Supreme Court has never — has held that a request for self-representation must be unequivocal, but it has never defined that word or articulated a test for determining whether a request is unequivocal. It literally just mentioned that word in passing in the Feretta decision. So if that's what counsel is relying on, here's the sentence. Weeks before trial, Feretta clearly and unequivocally declared to the trial judge that he wanted to represent himself. So that's all Feretta has ever said about the word unequivocal. And the lower courts have discussed what exactly that means, but the Supreme Court has not. So what that means is that the State courts have broad leeway to apply this very general test of what an unequivocal request really is. What do we do with the Ninth Circuit's case in Adams? Adams was a 1989 pre-ADPA case. And I think that's critical here because there's two factors that flow from that. One is that Adams was not required to be based on clearly established Supreme Court law. It could be based entirely on law that the circuit decided. And second, it wasn't required to give any deference to the State court opinion whatsoever. In fact, this Court in an unpublished Ninth Circuit opinion, Cavaniss v. Felker, which I cited in my brief, distinguished Adams v. Carroll for this exact reason. Because it was pre-ADPA and, therefore, there was no deference required to the State court opinion. So the Supreme Court has made clear that deference and relying on clearly established Supreme Court law, that's what distinguishes ADPA from these pre-ADPA cases. It takes Adams out of the realm of controlling precedent as far as this case goes. Sotomayor, haven't we cited Adams quite a bit, though? Haven't we treated it as authority in the ---- I'm just wondering what weight do you want us to give it? It's talking about what a word means. Right. And so ---- And it's a word that's used in a Supreme Court case. Well, to the extent Adams appeared to articulate some kind of rigid test, that's the part that there's no Supreme Court authority saying this is the test. And so to the extent Adams says that, I don't think that is accurate and that can't control for a State court opinion. However, I think that the controlling habeas case here is the Stenson v. Lambert case, which Your Honor authored. And this is how the Court harmonized these issues in an ADPA case in Stenson. It said, A clear preference for receiving new counsel over representing oneself does not conclusively render a request equivocal under Feretta, citing Adams. It may, however, be an indication that the request in light of the record as a whole is equivocal. And I think that's what we have to go with in these habeas cases where the Supreme Court has not established the kind of rigid test that the ---- But what other indication do we have that this is not equivocal or that this is not unequivocal? I think the State court mentioned a number of factors. First of all, at the Feretta hearing itself, the defendant said twice that if representing himself turned out to be too difficult, he would have his family hire a lawyer. So that's not consistent with him saying, if I can't get Mr. Berry, then the only thing I want to do is represent myself. He was saying, even at the time that he was discussing the possibility of representing himself, maybe I'll just hire somebody else. Then just 7 days later, he called Mr. Berry, the attorney he had just fired, and asked him to file this motion to advance his case. So he sought out counsel's assistance, even the one he said he didn't like, and even for this simple task. So, again, that's not consistent with wanting to represent himself. But what do you make of Mr. Hutchins' point that that was because the court was saying, look, if you need help on procedural matters, you know, maybe this guy can help you out? I don't think that that's exactly what happened at the Feretta hearing. The judge granted his request, but was reluctant to do so, given that this was a murder charge and a serious case. So he granted the request, but he set the next hearing date to kind of flesh out these issues. He talked about the possibility that Mr. Berry might be appointed advisory counsel, but that hadn't been done very much in this county, and so at the next hearing, they were going to talk about whether that was even possible, but the judge left it. He encouraged the defendant strongly to go out and hire his own attorney if that was, in fact, what he was thinking about doing. So I think it's not a fair character of the characterization of the record to say that at that Feretta hearing, he was saying, oh, feel free to use Mr. Berry as your advisory counsel. They were just talking about that as a mere possibility. They had not resolved it, and the focus was really on getting him to hire an attorney. Well, there's one other record question I had for you, that there was a letter apparently dated May 5th, 2006, and I think you mentioned in your brief, 14 of your brief, note 3, that the record, unfortunately, we don't have a copy of that letter in the record. Correct. And I'll forecast a question to defense counsel, and I'll be asking you the same question. So the only record we have of that letter is a reference in a transcript. Correct. Okay. And the quote from that letter, the judge at the time was apparently quoting from that letter where the defendant said, Your Honor, I know I need an attorney for this homicide case, and I need all the good help I can get. And remind me, counsel, Mr. Hutchins mentioned Judge A and Judge B. The judge who – Judge Clay, was he A or B? B. B. Okay. I think he was Judge B. Maybe not. Maybe Judge C. Fair enough. But that was another factor that the State court cited. This statement that he made in that letter, that he knew he needed an attorney, this was a homicide case, and he needs all the help, the good help he can get. So clearly, that shows that he didn't want to represent himself, that he knew he was facing these serious charges. And then the final factor that the State court cited was that when Judge C actually reappointed Mr. Berry, and the defendant was trying to say, no, I really do want to represent myself, the court said, based on this record, I don't believe you. So that is a factual determination based on the face-to-face confrontation that the judge was having with the defendant. And when the defendant said, no, I do want to represent myself, he said, I don't believe you. And it was based on all of the things that I've just outlined. He was aware of this statement that he said he wanted all the good help I can get and everything else that I've just outlined. So based on all of that, this is not a case like Adams where the way Adams stated it was Adams took one position and stuck to it. If the court would not order substitute counsel, he wished to represent himself. That's not what happened here. And so the State court was aware of Adams, but distinguished it on these facts. And that was not unreasonable. One other point that I definitely want to emphasize about what the State court did is it discussed at length the presumption against the waiver of counsel. Now, that's also clearly established by the Supreme Court. Every court indulges a presumption against the waiver of counsel. Given that overlay that we want to ensure that attorneys are representing people because of all the rights, that then ensures we have this presumption, we have all these facts that I just outlined, and then the ultimate question for this Court is, was that an unreasonable determination of the facts? Given the very broad determination of what is unequivocal, given all of these factual determinations, we think that this clearly falls within the ADPA presumption of deference and that this Court should affirm the conviction. Roberts. Thank you, counsel. Thank you, Your Honor. I'll point out that counsel ended in exactly the opposite place from where she started. She started by saying the Supreme Court hasn't fleshed out what equivocal means. We have to await that, otherwise it's not clearly, it's not contrary to, et cetera. And then she ended up saying equivocal, as every court has said. The question of whether something is equivocal is a factual determination. The word equivocal is not a term of art. It is used in its everyday dictionary meaning. It is irrelevant that the Supreme Court has not talked to what equivocal means in this situation. In terms of the letter that the Court asked about, he, Judge B – Judge Clay, by the way, was Judge C. He was the presiding judge to whom the letter was sent. Judge B was Judge Hymer, and he quoted that snippet to which the appellant immediately said, that is – that's not all I said. I said, if it's Mr. Berry, I'd rather represent myself. This is exactly like Adams. In Adams, the same request was made in between. Judge Kaczynski put it, sandwiched between the two hearings. This is quite different from Stetson – Stenson, in which the defendant did keep equivocating, did keep vacillating. This is a case in which the defendant did take one position and stick to it. I believe that that's sufficient for now. Thank you. Thank you very much, counsel. The matter is submitted.
judges: WALLACE, SCHROEDER, OWENS